# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**JOSEPH C. PERRY,**
      Petitioner,

vs.                                    No.  17-CV-00643 JAP/KK

**ATTORNEY GENERAL OF**
**STATE OF NEW MEXICO**,
      Respondent.


## MEMORANDUM OPINION AND ORDER

Pro se Petitioner Joseph C. Perry (Perry) filed a Petition[1] for a Writ of Habeas Corpus under

the Anti-Terrorism and Effective Death Penalty Act (AEDPA) 28 U.S.C. § 2254, arguing that his

New Mexico conviction and sentence for criminal sexual penetration and bribery and

intimidation of a witness violates his constitutional rights. Perry presents sixteen claims for

relief. Respondent has answered the Petition,[2] and Perry has replied.[3] The Court has reviewed the

Petition, all the briefing and the applicable law. For the reasons explained below, the Court

concludes that Perry is not entitled to habeas relief and will dismiss the Petition with prejudice.

## I.      <u>BACKGROUND AND PROCEDURAL HISTORY</u>

Under the AEDPA, a federal court must presume that a state court's factual findings are

correct unless clear and convincing evidence indicates otherwise. 28 U.S.C. § 2254(e)(1). There

---

[1] *See* PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY (Doc. 1) (Petition).
[2] *See* RESPONDENT'S ANSWER TO PRO SE PETITIONER JOSEPH C. PERRY'S PETITION FOR WRIT OF HABEAS CORPUS (28 U.S.C. § 2254) [DOC. 1] (Doc. 11) (Response).
[3] *See* PETITIONER'S REPLY TO RESPONDENT'S ANSWER TO PETITIONER PRO SE PETITION FOR WRIT OF HABEAS CORPUS (28 U.S.C. § 2254) [Doc. 1] (Doc. 14) (Reply).

are few factual findings in the record; however, the procedural history, verdict, and record support the following:

On September 2, 2006, Perry was in the Otero County Detention Center. His cellmate was 18-year-old Joshua Sommer. At trial, Mr. Sommer testified that on September 2, 2006, Perry seized him, put a sock in his mouth to gag him and then sexually assaulted him. After the assault, Perry threatened to harm Mr. Sommer if he told anyone about what happened.

On October 3, 2006, a New Mexico grand jury indicted Perry for kidnapping, second-degree criminal sexual penetration, bribery/intimidation of a witness, and two counts of tampering with evidence. Resp't Ap (Doc. 11-1), Ex. B at 6.[4] During the trial, Contract Public Defender, Mario Torres represented Perry. At the trial, the prosecution called several witnesses, including a Sexual Assault Nurse Manager (SANE), state detectives, a lab tech, employees of the detention center, and inmates Dale Ray Dixon and Castille Amaya. *See* Recording, CR 2006-539. The prosecution produced DNA evidence and other exhibits including photos of the crime scene. *Id.*

At the conclusion of the trial, but before the jury began to deliberate, the bailiff told the court that one of the jurors was making inappropriate statements. CR 2006-539, Day Three at 9:00. Defense counsel asked for a mistrial. The court denied the mistrial, finding that any error would be cured by dismissal of the juror. *Id.* at 9:16-9:17. The court dismissed the juror and appointed the alternate before the jury began deliberations. *Id.*

On August 23, 2007, the jury found Perry guilty of criminal sexual penetration and intimidation of a witness.[5] After trial but before sentencing, Perry alleged that his trial counsel

---

[4] Hereinafter, Respondent's Appendix will be referred to "RA."
[5] The jury acquitted Perry on the two tampering with evidence charges. The first count alleged that Perry tampered with evidence by hiding two white socks to evade apprehension, prosecution, or conviction. RA (Doc. 11-1), Ex. E, Jury Instruction 10 at 31. The second count alleged that Perry tampered with evidence by rinsing items of clothing. *Id.*, Jury Instruction 11 at 32. The jury could not agree on the kidnapping charge. CR 2006-0539. Day Three at 5:30. The state court judge declared a mistrial as to that count only. *Id.* at 5:41; RA (Doc. 11-1), Ex. F at 42. On February 29, 2008, the state filed a Nolle Prosequi on that charge. *Id.* (Doc. 11-1) Ex H at 45.

was ineffective, and asked for new counsel. *Id.* at Ex. G, 44. Subsequently, Mr. Gerald Montrose, a contract public defender was appointed to represent Perry in his future proceedings.

On August 27, 2007, the state filed a Supplemental Criminal Information, seeking a habitual enhancement under NMSA 1978 § 31-18-17. *See Id*, Ex. C at 10-15. Subsequently, on February 11, 2008, the Twelfth Judicial District Court of the State of New Mexico (state district court) imposed a sentence of nine years for the criminal sexual penetration offense and three years for the intimidation of a witness offense. *Id.,* Ex. A at 1-2. The state district court then found that the Perry was a habitual offender under New Mexico law and enhanced both sentences individually by eight years, to run concurrently for a total sentence of 28 years. *Id.* at 2. Perry's appeal and lengthy post-convictions proceedings are recounted in detail below.

**Direct Appeal**

On August 11, 2008, Perry, through counsel, filed a notice of appeal with the New Mexico Court of Appeals (NMCA). RA (Doc. 11-1) Ex I at 46. On January 16, 2009, Perry filed a docketing statement with the NMCA. The NMCA rejected Mr. Perry's docketing statement on February 17, 2009 "because it failed to provide the facts and law necessary for [the NMCA's] review of Defendant's claims of error." *Id*., Ex. L at 68 (summarizing sequence of events). On March 12, 2009, Perry filed an amended docketing statement. *Id*., Ex. K at 52-58. In his amended statement, Perry made the following claims:

| | |
|---|---|
| Issue 1 - | Whether trial related statements made by a seated juror in the presence of other jurors before juror deliberations warrants a granting of a mistrial. |
| Issue 2 - | Whether Defendant's Miranda rights were violated in the taking of a statement made by Defendant and used at trial. |
| Issue 3 - | Whether Defendant's rights to a speedy trial were violated. |
| Issue 4 - | Whether Defendant was harmed by State Brady violations. Defendant alleges that potential exculpatory evidence was withheld by the state. |
| Issue 5 - | Whether trial counsel was ineffective thus warranting a new trial. |
| Issue 6 - | Whether pretrial publicity warranted a change of venue and if Defendant was denied the change in venue. |

Issue 7 -       Any and all issues which would affect Defendant's right to a fair trial.

*Id.*, Ex. K at 56-57.

On April 30, 2009, the NMCA entered a Notice of Proposed Summary Disposition (Notice). *Id.,* Ex. L at 67. On the merits, the NMCA proposed to affirm the trial court on all issues for one of the following reasons: the issue had been abandoned, Perry had failed to preserve the issue during the state court proceedings, or the issue was unsupported factually or legally. *Id*.

Perry then requested and was granted new appellate counsel,[6] and Mr. Karl Erich Martell was appointed. *See Id.*, Ex. G at 44. On June 10, 2009, Mr. Martell filed Defendant Appellant's Memorandum in Opposition to Proposed Summary Affirmance (Opposition Brief). *Id.,* Ex. M at 74-88.

In the Opposition Brief, Perry expanded his arguments on all issues. First, he argued that his previous counsel had incorrectly framed his claims concerning inappropriate juror statements and his right to a fair trial. According to Perry, his claim concerning the juror statements should have alleged that a juror stated, "Mr. Perry is guilty" and that the trial court erred when it failed to conduct a voir dire of every juror after learning of the juror's improper statements. *Id.* at 76. Perry argued that instead of making a claim based on any error that impeded his right to a full trial, his counsel should have alleged that cumulative error denied Perry his right to a fair trial. *Id*. at 85. Perry acknowledged that his argument concerning a violation of his Miranda rights had been abandoned. *Id.* at 78. Perry further admitted that he had not argued and thus failed to preserve his right to a speedy trial, his claim regarding exculpatory evidence, and his claim that he should have received a change of venue, but he asked that the NMCA remand for an

---

[6]Perry filed additional complaints against both Mr. Torrez and Mr. Montrose to the State Disciplinary Board. *See* Pet's App. (Doc. 1-12) at 15-16 (letter from the Disciplinary Board explaining that it would take no action in the absence of a court finding of incompetence or ineffective assistance of counsel).

evidentiary hearing and/or so he could perfect his appeal on these issues. *Id.* at 79-80, 84-85. Finally, Perry moved to amend the docketing statement to include "a challenge to the sufficiency of the evidence to support his habitual offender enhancement." *Id.* at 86.

On July 31, 2009, the NMCA affirmed Perry's conviction ("MOO"). *Id.,* Ex. N, at 89. The NMCA did not find Perry's Opposition Brief persuasive. In addressing Perry's argument concerning juror statements, the NMCA found that the judge had not erred when he denied Perry's request for a mistrial, and that Perry had failed to preserve his argument that the judge should have conducted a voir dire of the jurors because Perry never requested it. *Id.* at 90-93. Similarly, the NMCA found that Perry had conceded that he had not preserved his arguments concerning his right to a speedy trial, change of venue, or exculpatory evidence. *Id.* at 93-94, 96. Because Perry agreed that his claim concerning his *Miranda* rights had been abandoned, the NMCA did not further address it. *Id.* at 92. The NMCA found there was insufficient evidence to support Perry's ineffective assistance of counsel claim and stated that such claims were best brought in habeas proceedings. *Id.* at 94-95. The NMCA concluded that because it was Perry's burden to identify error, and he had not done so, there could be no cumulative error. *Id.* at 96. Finally, the NMCA denied Perry's motion to amend his docketing statement with a challenge to his habitual offender enhancement. *Id.* at 97. The NMCA observed that New Mexico law specifically provides for the use of a prior no contest conviction to enhance a sentence under the habitual offender statute and so any amendment would not be viable. *Id.* On August 12, 2009, Perry filed a petition for a writ of certiorari, identifying the same issues raised in his Amended Docketing Statement and expanded in his Opposition Brief. *Id.,* Ex. O at 99.

The New Mexico Supreme Court denied his petition without further explanation on September 2, 2009. *Id.*, Ex. P at 110. Its mandate issued on October 9, 2009. *Id.*, Ex. Q at 111.

**Post-Conviction Motions**

During this time, Perry also pursued two motions with the state district court, which he filed pro se. On May 22, 2009, Perry filed a Motion to Disclose Chain of Custody to All Evidence (Disclose Evidence Motion) and a Motion to Preserve All Evidence (Preserve Evidence Motion). *Id.*, Ex. R at 112, Ex. S at 114. The Disclose Evidence Motion asserted that the district attorney had a duty to disclose all evidence/chain of custody to the Plaintiff under New Mexico law. The Preserve Evidence Motion asked for a judgment of acquittal and that the state court preserve certain evidence for an appeal based on the sufficiency of the evidence. *See* RA (Doc. 11-2), Ex. V at 2 (amended docketing statement explaining arguments on appeal).

On May 29, 2009, the state district court denied both motions based on timeliness. RA (Doc 11-1), Ex. T at 116. Perry appealed the denial on July 16, 2009. *Id.,* Ex. U at 117. The NMCA filed a Notice [of] Proposed Summary Disposition on September 25, 2009. RA (Doc. 11-2), Ex. X at 8. In its proposed summary disposition, the NMCA found that the appealed orders were not properly before it and that the matters were beyond their jurisdiction for the following reasons: 1) the denials of the motions were not appealable orders; 2) the appeal was not before the NMCA as of right because Perry had already pursued one appeal in the case; and 3) Perry had filed the appeal pro se while he had representation. *Id.* at 9-11. The NMCA proposed to summarily dismiss. *Id.* at 11.

When Perry did not respond to the New Mexico Court of Appeals Notice of Proposed Summary Disposition, the New Mexico Court of Appeals entered a Memorandum Opinion dismissing the appeal on January 4, 2010. *Id.,* Ex. Y at 12. Its mandate issued on February 18, 2010. *Id.,* Ex. Z at 14.

**First Application for State Habeas Relief**

On December 14, 2009, while the appeal of the state court's denials of Perry's Disclose

Evidence Motion and his Preserve Evidence Motion were pending in the NMCA, Perry, pro se,

filed his first state Petition for a Writ of Habeas Corpus (First State Habeas Petition). *Id.,* Ex. AA

at 15. The petition asserted the following thirteen grounds:

| | |
|---|---|
| GROUND ONE: | Miranda Rights, Fifth Amendment Violations; |
| GROUND TWO: | Six month Rule date, Speedy trial, Due process; |
| GROUND THREE: | Discovery, "Brady" violation, NMRA, Rule 5-501; |
| GROUND FOUR: | Ineffective Assistance of Counsel; |
| GROUND FIVE: | Constitutional challenges to jury selection procedures; |
| GROUND SIX: | Contamination of Extraneous Influences; |
| GROUND SEVEN: | Pretrial and trial Publicity; |
| GROUND EIGHT: | Prosecutorial misconduct; |
| GROUND NINE: | Habitual Enhancement; |
| GROUND TEN: | Concern related to Plea of NO contest; |
| GROUND ELEVEN: | Procedures for post conviction consideration of DNA; |
| GROUND TWELVE: | Cumulative Effect of Counsel's Errors; |
| GROUND THIRTEEN: | Fundamental Error. |

*Id.* Ex. AA at 18-24.

On January 10, 2010, the state district court entered an Order denying the First State Habeas

Petition, finding that "[i]t plainly appears from the face of the Petition and the prior proceedings

in the case that the Court has no jurisdiction to grant the relief sought." *Id.* Ex. BB at 40.

On January 29, 2010, Perry filed a Petition for a Writ of Certiorari, arguing that the state

district court had wrongfully denied his First State Habeas Petition. *Id*., Ex. CC at 41. On

February 26, 2010, the New Mexico Supreme Court denied Perry's petition. *Id.* Ex. DD at 82.

**Second Application for State Habeas Relief**

On August 10, 2010, Perry pro se, filed a second Petition for Writ of Habeas Corpus (Second

State Habeas Petition). *Id.,* Ex. EE at 83. As grounds, Perry alleged:

| | |
|---|---|
| GROUND ONE: | Conviction obtained by the knowing use of perjured testimony at trial by Deputy District Attorney Janice B. Schryer; |

GROUND TWO:    Conviction obtained by unconstitutional jury instructions.

*Id.* at 85. To the petition, Perry attached a declaration signed by Dale Ray Dixon stating that state officers coerced both his witness statements and his trial testimony. *Id.* at 86. Mr. Dixon retracted his trial testimony that he had spoken with Perry or the victim on the morning of the sexual assault. On January 31, 2011, the state district court denied Perry's Second State Habeas Petition, finding that as a matter of law, he was not entitled to relief. *Id.,* Ex. FF at 109.

On February 22, 2011, Perry filed another petition for a writ of certiorari. RA (Doc. 11-3), Ex. GG at 1. On April 7, 2011, the New Mexico Supreme Court entered an Order granting this petition and ordering the state district court to appoint an attorney for Perry and to conduct an evidentiary hearing. *Id.*, Ex. II & JJ, at 79-81. On December 11, 2019, the state district court gave Perry an extension for filing an amended petition. *Id.*, Ex. LL at 86.

**Motion for Post-Conviction Consideration of DNA Evidence Testing**

On November 8, 2011, Perry filed a Petition for Post-Conviction Consideration of DNA Evidence Testing, seeking DNA testing of the socks allegedly used as a gag during the sexual assault. *Id.*, Ex. MM at 83. Much later, on January 20, 2015, Perry filed a second Motion to Grant Petition for Post-conviction Consideration of DNA Evidence Testing. *Id.*, Ex. QQ at 117.

Prior to the evidentiary hearing ordered by the New Mexico Supreme Court, the state district court denied Perry's 2011 motion to allow DNA evidence testing of a sock that may have been used to gag the victim. Pet's App. (Doc. 1-17), Order Denying Defendant's Motion to Grant Petition for Post-Conviction Consideration of DNA Evidence Testing at 7-8.

**Perry's Amended State Petition for Habeas Corpus**

On March 20, 2012, Perry filed an amended state petition for habeas corpus (Amended State Petition). *Id.,* Ex. OO at 87. In his Amended State Petition, Perry reasserted the previous two grounds and the following:

1. Prosecutorial misconduct for failure to disclose material, exculpatory evidence and the knowing use of false testimony;
2. Factual innocence;
3. Ineffective assistance of trial counsel for failing to pursue an adequate investigation of his actual innocence, for failing to investigate and analyze DNA evidence, for failing to pursue an adequate pretrial investigation, for unreasonable trial performance.

*Id.* at 95-108.

On March 9, 2015, Perry filed a supplement to his Amended State Petition (Supplement). RA (Doc. 11-4), Ex. SS at 1. The Supplement noted that Perry's counsel Jeffery Jones had retired from the practice of law, and that Robert E. Tangora was his new counsel. *Id.* Arguing that Perry and his previous counsel had a miscommunication, the Supplement sought to add the following claims:

1. The state should have conducted a DNA test on the socks allegedly used as a gag and its failure to do so prejudiced Perry;
2. The State violated Perry's right to due process when it did not inform him of the plea agreement between the victim and the state and when the state lost Perry's case file;
3. The prosecutor engaged in misconduct when she lost or destroyed material evidence, did not test the socks for the victim's DNA, objected to post conviction testing of the socks, and presented Dale Dixon's false testimony.

*Id.* at 3-8. The Supplement also requested an evidentiary hearing. *Id.* at 8-9.

**Evidentiary Hearing**

On July 22, 2016, the state district court held an evidentiary hearing on Perry's Second State Habeas Petition. At the hearing, the state district court noted that it had denied the motion for

DNA testing. *Id.*, Ex. UU at 50.[7] The state district court heard evidence regarding the following four issues: (1) whether Perry had ever raised with his attorney a consensual sex defense; (2) whether Dale Ray Dickson had perjured himself; (3) whether the district attorney had entered into a deal with the victim to entice the victim to lie; (4) and whether forensic evidence supported the jury verdict. *Id.* At the hearing, Mario Torrez, Dale Ray Dickson, Janis Schryer and Perry testified. *Id.* The state district court ruled orally, denying Perry's writ. On August 16, 2016, the state district court entered a written order memorializing its oral ruling (Evidentiary Order). Pet's App. (Doc. 1-18) Order Denying Defendant's Writ of Habeas Corpus, at 2-3.[8] In the Evidentiary Order, the state district court found the following:

1. Defendant failed to establish that his trial counsel, Mario Torrez, provided ineffective assistance of counsel;
2. Defendant's testimony, at the habeas hearing, that he had consensual sex with the victim was not credible;
3. Defendant did not tell Mr. Torrez that he wished to pursue a defense of consensual sex;
4. Mr. Torrez made a tactical decision, based on his years of experience, not to have further evidence forensically examined;
5. Defendant failed to prove that Dale Dixon was coerced into testifying falsely at trial;
6. Defendant failed to prove any change in Dale Dixon's testimony between the trial and the habeas hearing;
7. Defendant failed to prove that the State did not disclose any impeachment or exculpatory material
8. The State located its original case file and disclosed its contents to counsel for Defendant; and
9. There was substantial and compelling evidence supporting the verdict of the jury.

*Id.,* Ex. VV at 58-59.

On August 31, 2016, represented by counsel, Perry again filed a petition for a writ of certiorari with the New Mexico Supreme Court. RA (Doc. 11-5), Ex. WW at 1. As grounds,

---

[7] Exhibit UU is a log of the court proceedings and not an official record.
[8] In a footnote the state district court observed that "This Order encompasses Defendant's Writ of Habeas corpus [sic] filed on December 14, 2009; Amended Petition for Writ of Habeas Corpus filed on March 20, 2012, and Supplement to Amended Petition for Writ of Habeas Corpus filed on March 9, 2015." *Id.* at n.1.

Perry alleged that the state district court improperly denied Perry's Motion for DNA testing of the alleged gag socks, and that Perry had been denied effective assistance of counsel in violation of Article II, Section 14 of the New Mexico Constitution and the Sixth and Fourteenth Amendments of the United States Constitution. *Id*. at 13-16. The New Mexico Supreme Court denied this petition on February 24, 2017. *Id,* Ex. XX at 132.

**Perry's Legal Representation**

Throughout these legal proceedings, Perry has been represented by five different attorneys. During his trial, New Mexico Public Defender Mario Torrez represented him. After trial but before sentencing, Perry alleged that Mr. Torrez had been ineffective and complained to the New Mexico Public Defender. Consequently, the New Mexico Public Defender appointed Gerald Montrose to represent Perry, and he represented Perry during Perry's sentencing and the first part of his first appeal. In the NMCA Notice of Proposed Summary Disposition on Perry's first direct appeal, the NMCA found that Mr. Montrose had represented Perry ineffectively because Mr. Montrose had missed filing deadlines. *See* Pet's App. (Doc. 1-12).[9] Perry filed another complaint with the New Mexico Public Defender about Mr. Montrose's representation. Perry filed additional complaints against both Mr. Torrez and Mr. Montrose to the State Disciplinary Board.

---

[9] The New Mexico Court of Appeals stated the following:

> As an initial matter, this Court notes that Defendant's counsel has failed to follow the rules of this Court on multiple occasions during this appeal. The judgment and sentence in this case was filed on February 28, 2008. Defendant had thirty days in which to file a notice of appeal, see Rule 12-201(A)(2) NMRA, but the notice of appeal was filed late on August 11, 2008. Because the notice of appeal was filed late, this Court presumes that counsel was ineffective. Defendant then had thirty days from the date of the notice of appeal to file his docketing statement, see Rule 12-208(B) NMRA, but did not file the docketing statement until November 24, 2008. However, because Defendant failed to serve the district court clerk with the docketing statement as required by Rule 12-208(C), there was a delay in the preparation of the record proper, see Rule 12-209(B) NMRA (indicating that service of the docketing statement triggers the preparation of the record proper), which therefore delayed review by this Court. On February 17, 2009, this Court issued an order rejecting the original docketing statement because it failed to provide the laws and facts necessary for this Court's review of Defendant's claims of error. [rule citation and explanatory parenthetical omitted]. In response to this Court's order, Defendant timely filed an amended docketing statement on March 12, 2009. However, the amended docketing statement provides relevant authority for only a single claim of error and does not list the standard of review for any of Defendant's claims.

Pet's App. (Doc. 1-12) at 1-3 (citations to the record and explanatory parentheticals omitted).
Despite the Court's recognition and admonition to counsel for failure to follow the New Mexico rules of appellate procedure, the New Mexico Appellate Court considered the claim fully.

*See Id.* (Doc. 1-12) at 15-16 (letter from the Disciplinary Board explaining that it would take no action in the absence of a court finding of incompetence or ineffective assistance of counsel). Subsequently, the New Mexico Public Defender appointed Karl Erich Martell to represent Perry on the rest of his appeal. *See Id.* (Doc. 1-11) at 25 (Mr. Martell's introduction letter dated May 6, 2009). At some point undefined in the record, Perry also alleged that Mr. Martell had provided him with ineffective assistance of counsel. *See Id.* (Doc. 1-17) Stipulated Order Finding Exception to Attorney-Client Privilege, at 9-10 (observing that based on Perry's claims of breach of duty between him and attorneys Mario Torrez, Gerard Montrose, and Karl Martell, Perry had waived his attorney-client privilege). In 2012, Jeffery Jones represented Perry in the filing of the Amended State Petition. *Id.* (Doc. 1-19) Amended Petition for Writ of Habeas Corpus, at 24 (stating that the court had appointed Jeffery Jones as counsel). Mr. Jeffery Jones became ill during the pendency of the Second State Habeas Petition, and Mr. Robert E. Tangora was appointed to represent Perry, which he did for the final evidentiary hearing. *See Id.* (Doc. 1-17) at 8 (listing Mr. Tangora as counsel for Perry).

**Federal Habeas Petition**

On June 14, 2017, Perry, pro se, filed this Petition, which states the following sixteen grounds for relief:

| | |
|---|---|
| Ground One: | Fifth Amendment *Miranda* violations; |
| Ground Two: | Speedy trial rule; |
| Ground Three: | Failure to disclose evidence; |
| Ground Four: | Ineffective assistance of counsel; |
| Ground Five: | Unconstitutional jury selection; |
| Ground Six: | Contamination by extraneous influences; |
| Ground Seven: | Pretrial and trial publicity; |
| Ground Eight: | Prosecutorial misconduct; |
| Ground Nine: | Invalid use of two enhancements under New Mexico habitual offender statute; |
| Ground Ten: | Invalid use of "no contest plea" in New Mexico habitual offender statute; |

| Ground Eleven: | Invalid use of DNA evidence at trial; |
| Ground Twelve: | Cumulative effect of counsel's errors; |
| Ground Thirteen: | Fundamental error; |
| Ground Fourteen: | Due process violation based on denial of first habeas petition; |
| Ground Fifteen: | Denial of compulsory process to obtain witnesses favorable to the defendant; |
| Ground Sixteen: | Conviction obtained by the knowing use of perjured testimony. |

*See* Petition (Doc. 1) at 5. In Response, the State argues that Perry has not met his burden under 28 U.S.C. § 2254.

Perry's Petition includes claims made in his direct appeal, his First State Habeas Petition and his Second State Habeas Petition and the Amended State Petition.

## II. ANALYSIS

**A.      Habeas Threshold Requirements Under § 2254**

**1.      Requirement that a habeas claim assert a violation of a prisoner's federal constitutional rights or law.**

Habeas petitions alleging federal constitutional violations based on state proceedings filed after April 24, 1996 are by governed 28 U.S.C. §2254 as amended by the AEDPA. Under § 2254, federal habeas relief is available to a state petitioner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." § 2254(a); *see also Swarthout v. Cooke*, 562 U.S. 216, 219 (2011). "[F]ederal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).

The parties agree that Perry was in custody on the day he filed this Petition, and that he remains in custody. However, Respondent asserts, and the Court agrees, that three of Perry's claims are not properly before the Court because they involve only violations of state law.

Grounds Nine and Ten of the Petition assert error based on the application of New Mexico's Habitual Offender statute. In Ground Nine, Perry argues that the state district court improperly

enhanced both of his convictions under the statute because each conviction stems from the same transaction. This argument appears in Perry's First State Habeas Petition. Ground Ten argues that Perry's sentence was improperly enhanced because one of his convictions was the result of a "no contest" plea. This argument appeared first in Perry's Opposition Brief in his direct appeal where he sought to include it through an amendment to his appeal. The NMCA denied his motion to amend, observing that New Mexico state law specifically provides that a "no contest" plea may be used in applying the habitual offender statute. *See* RA (Doc. 11-1), Ex. N at 9.

Significantly, Perry cites no federal statute or federal constitutional right as a basis for either Ground Nine or Ten. His arguments rely solely on New Mexico law. To obtain federal habeas relief, a petitioner must assert a violation of his federal rights. §2254(a). *See Estelle*, 502 U.S. at 67-68 (holding "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). The correct interpretation and application of state sentencing laws are a state issue, not a federal one. *See Lackawanna County, Dist. Att'y v. Coss*, 532 U.S. 394, 404 (2001) (holding "the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained."); *Anderson-Bey v. Zavaras*, 641 F.3d 445, 453 (10th Cir. 2011) (same);, *Burleson v. Saffle*, 278 F.3d 1136, 1140 (10th Cir. 2002) (finding a state's decision not to apply retroactively a case overruling a double conviction for a single event to a defendant's conviction was a matter of state law); *Dority v. Farris*, 560 Fed. Appx. 786, 790 (10th Cir. 2014) (finding that a state's "application or misapplication of the state's sentence enhancement statute is a matter of state law that is not cognizable in a habeas proceeding.").

In Ground Eleven, Perry argues that the state district court erred in the procedures it followed for post-conviction DNA consideration. Pet's App. (Doc. 1-1) at 5. As support, Perry cites

NMSA 31-1A-2 and two cases that have been overruled or superseded by statute. The two cases, *State v. Anderson*, 115 N.M. 433 (N.M. Ct. Ap 1993) *reversed by State v. Anderson*, 118 N.M. 284 (NM 1995) and *Frye v. United States*, 54 App. D.C. 46 (1923) superseded by statute as stated in *United States v. Davis*, 40 F.3d 1069, 1074 (10th Cir. 1994) are unrelated to the New Mexico procedural rule. In *Anderson*, the NMCA found that DNA evidence was not admissible because it was unreliable. *Anderson*, 115 N.M. at 444. In *Frye*, the Court of Appeals for the District of Columbia articulated a standard for determining whether scientific evidence was admissible. *Frye*, 54 App. D.C. at 47. In contrast, the New Mexico rule provides a series of procedures for "[a] person convicted of a felony, who claims that DNA evidence will establish his innocence, may petition the district court to order the disclosure, preservation, production and testing of evidence that can be subjected to DNA testing." NMSA 1978 §31-1A-2(A).

Respondent argues that Perry's argument is an attack on the state district court's denial of his post-petition motion for testing of DNA evidence under NMSA 1978 31-1A-2. Response (Doc. 11) at 26-27. According to Respondent, the claim is not properly before this Court because it is an argument contesting the state court's application of a procedural rule. The Court agrees.

The claim does appear to be one contesting the state district court's denial of Perry's post-conviction motion. However, in making this claim, Perry does not state how or why the denial affected the fairness of his trial. Most importantly, he does not assert how the denial of his post-conviction motion affected a federal right. "Without more, such claims of state procedural or trial errors do not present federal questions cognizable in a federal habeas corpus suit." *Brinlee v. Crisp*, 608 F.2d 839, 843 (10th Cir. 1979). Furthermore, the caselaw Perry cites does not support his claim and both cases are no longer good law.

Because Grounds Nine, Ten, and Eleven do not assert violations of federal law, the Court denies these claims.

### 2. Requirement that a state prisoner's federal claim be exhausted in state court

Not only must a state prisoner assert violations based on federal law, but before a federal court may consider those federal claims, the state prisoner must have exhausted his claims in state court and no independent and adequate state ground may stand as a bar. *Jackson v. Virginia*, 443 U.S. 307, 321 (1979) (further citation omitted); 28 U.S.C. §2254(b). A state court's decision denying claims is an adjudication on the merits even if it is unaccompanied by an explanation for the decision. *Harrington v. Richter,* 562 U.S. 86, 99 (2011). Failure to meet these requirements procedurally bars a claim. *Cone v. Bell*, 556 U.S. 449, 467 (2009). A claim is exhausted when it has been fairly presented to the appropriate state court for review. *Id*. A petitioner need only present a claim once through direct appeal or collateral review. *Brown v. Allen*, 344 U.S. 443, 447 (1953).

Perry's Petition presents a unique matter concerning exhaustion. His Petition includes two claims presented only in his First State Habeas Petition.[10] Without stating the basis for its finding, the state court denied the First State Habeas Petition based on lack of jurisdiction. RA (Doc. 11- 2), Ex. BB at 40. Generally, a denial based on lack of jurisdiction is not a denial on the merits. Under most circumstances, the state court's finding that it did not have jurisdiction would indicate that the claims that appear only in the First State Habeas Petition are unexhausted.[11] When a federal petition presents both exhausted and unexhausted claims, a federal court cannot address any of the claims until all have been exhausted, or a petitioner dismisses the unexhausted

---

[10] Specifically, Ground Five (constitutional challenges to jury selection procedures) and Ground Nine (habitual enhancement) appear only in his First State Habeas Petition.

[11] The Court notes that some of the claims first made in Perry's direct appeal to the NMCA include arguments made only in the First State Habeas Petition.

claims, unless an exception applies. *See Harris v. Champion*, 48 F.3d 1127, n.3 (10th Cir. 1995). However, this case presents an additional conundrum.

In the Evidentiary Order that followed the Second State Habeas Petition, the state district court stated that "this Order encompasses Defendant's Writ of Habeas Corpus filed on December 14, 2009," which is the First State Habeas Petition. The state district court did not clarify whether its inclusion of the First State Habeas Petition in its Evidentiary Order is a reconsideration of that petition followed by a denial or alternatively, an affirmation of its previous jurisdictional denial. Nor does the record supply any clarity. At the evidentiary hearing, the state district court heard evidence and testimony only on matters raised in Perry's Second State Habeas Petition, and/or tangentially his direct appeal.

Nonetheless, this Court need not decide whether the state court's Evidentiary Order was a merits determination of the First State Habeas Petition, because the state has waived any exhaustion objection. The exhaustion requirement arises from the principle of comity and is an acknowledgment that "the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). However, a state may waive the exhaustion requirement through its counsel's express statement. 28 U.S.C. § 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement."). The exhaustion challenge is waived when a state acknowledges its "clear and accurate understanding of the [procedural issue]" and "deliberately steer[s] the District Court away from the question and toward the merits of [the petitioner's] petition." *Wood v. Milyard*, 566 U.S. 463, 474 (2012).

Here, in its briefing Respondent acknowledges that Mr. Perry had raised some of his federal claims only in the First State Habeas Petition, but it also asserts that there was a denial on the merits of all claims presented in the First State Habeas Petition. *See* Response (Doc. 11) at 9, 25, 27. In addition, Respondent argues the merits of each federal claim. Therefore, the Court concludes that to the extent the First State Habeas Petition claims were unexhausted in state court, Respondent has waived the exhaustion requirement.

Perry has two other claims that were raised in his New Mexico appeal but were not considered by the NMCA for procedural reasons. If a state procedural rule requires a claim to first be raised at trial and a petitioner fails to do so, the "failure to timely object to its admission amount[s] to an independent and adequate state procedural ground which [prevents] direct review [in federal courts]." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977) (further citation omitted); *see also Simpson v. Carpenter*, 912 F.3d 542, 565 (10th Cir. 2018) (observing "'Consequently, when a litigant fails to raise an issue below in a timely fashion and the court below does not address the merits of the issue, the litigant has not preserved the issue for appellate review.'") (quoting *F.D.I.C. v. Noel*, 177 F.3d 911, 915 (10th Cir. 1999) (further internal citations omitted)). A state court's denial of the claim must clearly indicate that it is rejecting the claim based on state procedural rules. *See Jackson v. Shanks*, 143 F.3d 1313, 1317 (10th Cir. 1998) (observing that procedural default is appropriate when state has raised and preserved the issue of procedural default). A petitioner may attain review of an otherwise waived claim, if the "petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice." *Hickman v. Spears*, 160 F.3d 1269, 1271 (10th Cir. 1998); *Smith v. Workman*, 550 F.3d 1258, 1274 (10th Cir. 2008). The NMCA found that Perry had procedurally defaulted on his speedy trial claim (Ground Two) and his change of venue claim (Ground Seven).

Citing state rule, 12-216(A) NMRA,[12] the NMCA found that both Perry's speedy trial claim and his change of venue claim were not preserved for its review. Under this state procedural rule, an appellant must "fairly invoke" a ruling or decision by the trial court "[t]o preserve an issue for review." 12-321(A) NMRA. The NMCA observed that Perry conceded that he had never raised either the speedy trial issue or the change of venue issues during the state trial and therefore, NMCA concluded that Perry waived these claims. *See* RA (Doc. 11-1), Ex. N at 4, 8 (stating "Defendant, however, also concedes that he never raised this issue [speedy trial rights] in state court, and "[h]owever, Defendant concedes that this issue [pretrial publicity] was not raised in the district court.") (internal citation to record omitted). The Tenth Circuit has held that this New Mexico procedural bar is an independent and adequate state ground. *Jackson*, 143 F.3d at 1318 (finding "New Mexico law provides that the failure to raise issues in a direct criminal appeal results in waiver of those claims for purposes of state post-conviction relief" and that his rule has been "consistently and even handedly applied.").

Consequently, the Court cannot further consider Perry's speedy trial claim or his change of venue claim unless Perry demonstrates cause and prejudice for the default or shows that a fundamental miscarriage of justice will result. A petitioner may make that showing by demonstrating that efforts to raise the claim at earlier stages were impeded by an objective factor, such as "'interference by officials' that makes compliance with the State's procedural rule impracticable, and 'a showing that the factual or legal basis for a claim was not reasonably available to counsel.'" *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Perry does not argue that any factors kept him from earlier pursuing these claims, and the Court will not further consider them here.

---

[12] This rule was re compiled as 12-321, effective December 31, 2016.

The following claims are left for the Court to consider: Fifth Amendment *Miranda* violations (Ground One); Failure to disclose evidence (Ground Three); Ineffective assistance of counsel (Ground Four); Unconstitutional jury selection (Ground Five); Contamination of extraneous influences (Ground Six); Prosecutorial misconduct (Ground Eight); Cumulative effect of counsel's errors (Ground Twelve); Fundamental error (Ground Thirteen); Due process violation based on denial of first habeas petition (Ground Fourteen); Denial of compulsory process to obtain witnesses favorable to the defendant (Ground Fifteen); and Conviction obtained by the knowing use of perjured testimony (Ground Sixteen).

**B.      Habeas Review of Federal Claims**

Congress constructed the AEDPA to "further the principles of comity, finality, and federalism." *Williams v. Taylor*, 529 U.S. 420, 436 (2000). Toward that end, the AEDPA establishes a standard of deference for a federal court's review of habeas corpus petitions brought by state prisoners. *See Fairchild v. Workman*, 579 F.3d 1134, 1158 (10th Cir. 2009). If an application includes a claim that has "been adjudicated on the merits in the State court proceedings," then a federal court may grant habeas relief only if the petitioner establishes that the state court decision was "(1) 'contrary to', or (2) 'involved an unreasonable application of' federal law that was clearly established by the Supreme Court", or (3) "a state court decision was based on an unreasonable factual determination." *Murphy v. Royal*, 875 F.3d 896, 913 (10th Cir. 2017) (quoting 28 U.S.C. § 2254(d)(1) (2)) (further internal citations omitted). "[A] decision by a state court is 'contrary to' our clearly established law if it 'applies a rule that contradicts the governing law set forth in our cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'" *Price v. Vincent*, 538 U.S. 634, 640 (quoting *Williams*, 529 U.S. at 405-406). A

state court unreasonably applies clearly established law, when the state court applies "'the facts of [a] case in an objectively unreasonable manner.'" *Id.* at 641 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (*per curiam*)). A petitioner who alleges that a decision was based on an unreasonable determination of the facts cannot allege simply that "the state court's determination was incorrect" but must show "that determination was unreasonable—a substantially higher threshold." *Schirro v. Landirgan*, 550 U.S. 465, 473 (2007). "[A] state-court decision unreasonably determines the facts if the state court 'plainly misapprehend[ed] or misstate[d] the record in making [its] findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim.'" *Wood v. Carpenter*, 907 F.3d 1279, 1289 (10th Cir. 2018) (alteration in original) (quoting *Byrd v. Workman*, 645 F.3d 1159, 1170-71 (10th Cir. 2011)).

A federal court must presume the correctness of a state court factual determination. 28 U.S.C. 2254(e)(1); *see also Schirro*, 550 U.S. at 474. The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Brumfield v. Cain*, -------- U.S. --------, 135 S.Ct. 2269, 2277 n.8 (2015) (quoting § 2254(e)(1)). Such deference is mandated even when a state court resolves the claim with little or no reasoning. *Paine v. Massie*, 339 F.3d 1194, 1198 (10th Cir. 2003). A state court's decision is on the merits, even when it denies a prisoner's claim "without an accompanying statement of reasons." *Harrington*, 562 U.S. at 92. "Congress crafted such a deferential standard to ensure review under §2254 serves only as 'a guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Wood*, 907 F.3d at 1289-1290 (quoting *Harrington*, 562 U.S. at 102-103 (additional internal quotation omitted)).

The court has reviewed all briefing and all state court records of the proceedings and has determined that an evidentiary hearing is not warranted. *See* 28 U.S.C. § 2254(e) Rule 8(a); *see also Schriro*, 550 U.S. at 474-475.

###### 1.    Violation of Miranda Rights Claim (Ground One)

In Ground One of his Petition, Perry asserts a violation of his Fifth Amendment right not to incriminate himself. In *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." The Supreme Court has determined that a series of warnings, which are known as the *Miranda* warnings, are an effective procedural safeguard for a defendant's Fifth Amendment privilege against self-incrimination. *Id.* at 479 (finding the following measures are required: "[the defendant] must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.").

According to Perry, state officials took a statement from him without giving him *Miranda* warnings and then used that statement at trial. In Perry's direct appeal as here, he does not identify the statement. In fact, in Perry's Objections to the NMCA, he indicates that "there was never a statement taken from him by police, and that this issue is not meritorious and should not have been raised." *See* RA (Doc. 11-1), Ex. M at 78. Based on this statement, the NMCA found that Perry's *Miranda* claim, had been expressly abandoned. *Id.,* Ex. N at 92.

An abandoned claim cannot be renewed. *See, e.g., Escue v. Northern OK College*, 450 F.3d 1146, 1151 n.1 (10th Cir. 2006) (observing that a plaintiff who expressly renounces a claim

cannot renew the abandoned claims on appeal). Even if Perry could renew this claim, the record

does not support it. First, as in his direct appeal, Perry offers no factual basis for it. *See* Pet's

App. (Doc. 1-1) at 1. The Court does not know what statement was taken in violation of Perry's

Fifth Amendment rights or how the statement was used. Notably, the only evidence in the record,

Perry's acknowledgement that no statement was ever taken or used, contradicts Perry's *Miranda*

claim.

### 2.    Brady Claim (Ground Three)

In *Brady v. Maryland*, the Supreme Court held that under the Due Process Clause of the

Fourteenth Amendment, prosecutors have a constitutional responsibility to disclose all evidence

favorable to the defense. 373 U.S. 83, 86 (1963). A claim for a violation of *Brady* must have

three elements: "(1) the prosecutor suppressed the evidence; (2) the suppressed evidence was

favorable to the accused, either because it is exculpatory or because it is impeaching; and (3)

prejudice ensued because the suppressed evidence was material." *Simpson*, 912 F.3d at 569

(citations omitted). The petitioner has the burden of establishing a *Brady* violation. *Foster v.

Ward*, 182 F.3d 1177, 1191 (10th Cir. 1999). In Ground Three of Perry's Petition, he claims that

the prosecution either failed or delayed providing him with log sheets and chain of custody

documents, which denied him a fair trial under *Brady*. He does not support this claim with any

citation to the record or explain how the state court erred in concluding otherwise.

The NMCA considered Perry's *Brady* claim and found both that it had been procedurally

defaulted because it had not been raised below and that there was no merit to the claim. *See* RA

(Doc. 11-1), Ex. N at 93. The NMCA observed:

> Defendant concedes that he did not raise this issue below, and he is unable to demonstrate
> on appeal that the evidence relating to the chain of custody was suppressed by the
> prosecution (in fact, Defendant states that he was able to cross-examine a State's witness

on this issue, suggesting that he was aware of the evidence) that it was favorable, or that it was material. We, therefore, find no error.

*Id.*

Despite the NMCA's ruling, Perry had a second chance to prove this claim at the state habeas evidentiary hearing. After hearing the evidence, the state district court found that "Defendant failed to prove that the State did not disclose any impeachment or exculpatory material" and that "[t]he State located its original case file and disclosed its contents to counsel for Defendant." RA (Doc. 11- 4), Ex. VV at 59. Perry does not identify any error in the findings and thus, Perry does not establish any of the factual requirements for making a *Brady* claim. By failing to do so, Perry has not rebutted the state district court's findings with clear and convincing evidence, nor has he provided any basis for this Court to conclude that either the NMCA or the state district court's rulings were contrary to or an unreasonable application of federal law.

### 3.      Ineffective Assistance of Counsel (Grounds Four, Fifteen & Twelve)

Courts evaluate ineffective assistance of counsel claims under the two-prong test established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984). Under *Strickland*, Perry must show both that his counsel's performance 'fell below an objective standard of reasonableness' *and* that 'the deficient performance prejudiced the defense.'" *Simpson*, 912 F.3d at 593 (quoting *Byrd*, 645 F.3d at 1167) (internal emphasis in original, further citation omitted). Courts often identify these prongs as the performance prong and the prejudice prong. *See, e.g.*, *Boltz v. Mullin*, 415 F.3d 1215, 1222 (10th Cir. 2005).

Under the performance prong, an attorney's performance will be deficient when if falls outside "the wide range of professional assistance." *Strickland*, 466 U.S. at 689. Courts must be deferential when evaluating an attorney's performance and begin with the presumption that counsel's conduct was reasonable as "sound trial strategy." *Id*. To that end, a court must evaluate

the challenged conduct from the attorney's viewpoint at the moment of the alleged error and avoid the "distorting effects of hindsight." *Id.*

The prejudice prong is met only when a petitioner shows that his counsel's deficient performance actually prejudiced his defense. A lawyer prejudices a petitioner's defense when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is a material error that is "sufficient to undermine confidence in the outcome." *Id.* A court may address the prejudice and performance prongs in any order. *Id.* Failure to prove either is fatal to the claim. *Id.* at 697. A court reviewing an ineffective assistance of counsel claim under both the AEDPA and *Strickland* is "'highly deferential, and when the two apply in tandem, review is 'doubly' so." *Simpson*, 912 F.3d at 594 (quoting *Richter*, 562 U.S. at 105) (further quotation omitted). The question under § 2254 is "not whether counsel's actions were reasonable" but "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

In this claim, Perry argues that his trial attorney failed to prepare a defense, call two witnesses, or acquire full discovery. The state district court reviewed Perry's ineffective assistance of counsel claim in the habeas evidentiary hearing. In its Evidentiary Order, the state district court made the following four relevant findings:

1.  Defendant failed to establish that his trial counsel, Mario Torrez, provided ineffective assistance of counsel;
2.  Defendant's testimony, at the habeas hearing, that he had consensual sex with the victim was not credible;
3.  Defendant did not tell Mr. Torrez that he wished to pursue a defense of consensual sex; [and]
4.  Mr. Torrez made a tactical decision, based on his years of experience, not to have further evidence forensically examined.

RA (Doc. 11-4), Ex. VV at 58. Perry does not specifically explain how or why the state district court erred in making these findings.[13] Because he has not shown prejudice, Perry's ineffective assistance claim must fail. *See United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (finding that conclusory allegations are insufficient to support an assertion of ineffective assistance of counsel).

Perry also asserts that cumulative error warrants habeas relief. "[T]he 'cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error.'" *Duckett v. Mullin*, 306 F.3d 982, 992 (10th Cir. 2002) (quoting *United States v. Rivera*, 900 F.2d 1462, 1469 (10th Cir. 1990) (*en banc*)). "A cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *Id.* A cumulative error analysis should not examine the cumulative effect of non-errors. *Rivera*, 900 F.2d at 1470.

The state district court found that Perry's trial counsel had not provided ineffective assistance. Similarly, in Perry's direct appeal, the NMCA found no error. Perry has not met his burden in showing error by demonstrating something in the record that supports his conclusory allegations. In the absence of any error, there can be no cumulative error.

## 4. Unconstitutional Jury Selection Claim (Ground Five)

In Ground Five, Perry asserts a violation of his Sixth Amendment rights. According to Perry, the state district court was constitutionally required to ask about a juror's racial bias if asked to

---

[13] In Perry's direct appeal where he had the benefit of counsel, the NMCA noted the paucity of the record with respect to Perry's ineffective assistance of counsel claims, "there was not sufficient evidence of record to support Defendant's claim that he was prejudiced by any such errors" and observed that it preferred the claims be resolved on habeas because further evidence was required. RA (Doc. 11-1), Ex. L at 71-72.

do so by a defendant and "if there is a reasonable possibility that racial prejudice may influence the Jury conviction obtained by the section of a grand or petit Jury which was unconstitutionally selected and impaneled." Pet's App. (Doc. 1-1) at 3.

Respondent interprets Plaintiff's argument as a claim of racial discrimination in jury selection. Response (Doc. 11) at 18. In *Batson v. Kentucky*, the Supreme Court found that the Equal Protection Clause of the Fourteenth Amendment prohibits a prosecutor's use of preemptory challenges in jury selection to "challenge potential jurors solely on account of their race." 476 U.S. 79, 89 (1988). In reference to this case, this type of challenge is often referred to as a *Batson* claim. *See, e.g., Grant v. Royal*, 886 F.3d 874, 948 (10th Cir. 2018). Respondent argues that Perry has not presented any facts to support his *Batson* claim. However, after reviewing the cases cited by Perry, the Court does not agree with the State that Ground Five is a *Batson* claim.

Perry bases Ground Five on the Sixth Amendment and cites two cases in support: *Taylor v. Louisiana,* 419 U.S. 522 (1975) and *Truesdale v. Moore*, 142 F.3d 749, 755 (4th Cir. 1998). *Taylor* and *Truesdale* examine a criminal defendant's Sixth Amendment right to be tried by an impartial jury drawn from sources reflecting a fair cross section of the community. In *Taylor*, the Supreme Court found that a systemic exclusion of women from a jury pool violated a defendant's right to a jury composed of a fair cross section of the community. *Taylor*, 419 U.S. at 531. In *Truesdale* the Fourth Circuit examined whether substantial underrepresentation of a group was *prima facie* evidence that there was a violation of the Sixth Amendment right to a jury that represented a fair cross section of the community. *Truesdale*, 142 F.3d at 755.

While Perry's argument is not clearly presented, his reliance on the Sixth Amendment, and his citation to *Taylor* and *Truesdale* indicates that he believes that the jurors in his trial did not

represent a fair cross section of the community. To establish a violation of this right, a defendant must show the following: "'(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.'" *Berghuis v. Smith*, 559 U.S. 314, 319 (2010) (quoting *Duren v. Missouri*, 439 U.S. 357, 364 (1979)). In making this claim, Perry does not point to any facts in the record; he cites only the law. Specifically, he does not provide any information as to the composition of the jury, why the jury panel did not reflect an accurate cross section of the community, or why the jury panel did not reflect a fair cross section as to him. The Court cannot review this claim in the absence of facts. *See, e.g., Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840-41 (10th Cir. 2005) (observing that a plaintiff's conclusory allegations without citations to the record or legal authority "disentitle[d] him to review").

### 5. Jury Contamination Claim (Ground Six)

In Ground Six, Perry alleges that "unapproved Private communications" with jurors on his jury exposed them to "extraneous influences" that prejudiced his trial. Although this argument is not clearly presented, it appears to allude to Perry's claim in his direct appeal that a statement made by a juror prejudiced his jury. In Perry's first docketing statement to the NMCA, he argued that a juror had "made comments [in the presence of other jurors] seeking information about the case outside of the evidence presented in the courtroom." RA (Doc. 11-1), Ex. K at 55-56. Perry claimed that the juror prejudiced the jury and that the state district court abused its discretion when it did not grant Perry's request for a mistrial. After the NMCA entered its proposed affirmance, which found that the state district court did not err because its remedy of striking the

juror and replacing it with an alternate was adequate, Perry introduced another factor to his argument. According to Perry the juror also stated to other jurors that Perry was guilty. Perry argued the state district court's remedy was not adequate because it should have conducted a voir dire of the jurors.

In its MOO, the NMCA first observed that Perry had abandoned his argument that the state district court abused his discretion in denying the mistrial. Accepting as true Perry's allegation that the juror stated that Perry was guilty, the NMCA reaffirmed its proposed holding that the state court's remedy was constitutionally adequate. Finding nothing in the record indicating that Perry had ever sought to voir dire the jurors, the NMCA held that the state district court had not abused its discretion for not employing a procedure Perry had not requested. Because Perry had not argued that the failure to employ these procedures was fundamental error, the NMCA declined to address that argument.

In the Petition, Perry offers no factual support for this claim. He sole support of his argument is a citation to *Remmer v. United States*, 347 U.S. 227 (1954). In *Remmer*, an outside party attempted to bribe a juror. The Supreme Court found that "[i]n a criminal case, any private communication, contract, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial…" *Id.* at 229. Perry does not directly connect *Remmer* to his NMCA voir dire argument, but it seems to be the basis for it. Because Perry only cites law, and not facts, this argument appears to allege that NMCA's holding was contrary to or a misinterpretation of federal law regarding his due process right to a fair trial with an impartial jury.

*Remmer* is not persuasive on this point. The Tenth Circuit has specifically declined to apply *Remmer* to § 2254 proceedings, holding that the *Remmer* rule is a rule of federal criminal

procedure, not a rule of federal constitutional law. *Crease v. McKune*, 189 F.3d 1188, 1193 (10th Cir. 1993). Perry has offered no other legal or factual basis to support this claim.[14]

### 6.    Prosecutorial Misconduct Claims (Grounds Eight & Sixteen)

In Ground Eight of Perry's Petition, he seeks relief for prosecutorial misconduct. In a habeas proceeding, there are two ways in which prosecutorial misconduct can result in constitutional error. First, prosecutorial misconduct can prejudice a specific constitutional right. *Matthews v. Workman*, 577 F.3d 1175, 1186 (10th Cir. 2009). Second, prosecutorial misconduct may entail conduct "so egregious as to render the entire proceedings against the defendant fundamentally unfair.*" Smallwood v. Gibson*, 191 F.3d 1257, 1275 (10th Cir. 1999). "The ultimate question is whether the jury was able to fairly judge the evidence in light of the prosecutors' conduct." *Bland v. Simmons*, 459 F.3d 999, 1024 (10th Cir. 2006). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

Perry asserts that the Prosecutor made a statement that he was guilty, impeached one of the prosecutor's own witnesses, and made statements about the case in front of Perry's mother and other witnesses. Perry does not identify the witness who was impeached, nor does he identify why the impeachment denied him a fair trial. With respect to the last two categories, Perry does not identify either the specific statements or their subject matter.

Respondent argues that the alleged impeachment never occurred and that after reviewing the transcript the State could find no improper prosecutorial statements. However, the Court will not speculate about the facts that may or may not support Perry's argument. Although Perry is a pro

---

[14] He also cites a case from the Ninth Circuit and one from the Second Circuit. *See United States. v. Schwarz*, 283 F.3d 76, 98-99 (2d Cir. 2002) and *United States v. Keating*, 147 F.3d 895, 900 (9th Cir. 1998). Perry does not indicate how these cases support this claim. Notably, because these cases are from the Second Circuit and the Ninth Circuit, they cannot overrule a Tenth Circuit case.

se defendant and the Court will evaluate his arguments liberally, it will not construct his arguments for him. S*ee Garrett*, 425 F.3d at 840-41. When a state prisoner makes a prosecutorial misconduct claim, it is incumbent on the petitioner to explain how the misconduct resulted in unfairness at trial. Perry has not done so with respect to Ground Eight.

Ground Sixteen is also based on allegations of prosecutorial misconduct. Perry asserts that the prosecutor obtained Perry's conviction by the knowing use of perjury when she coerced Dale Dixon to give false testimony at trial. The record contains a declaration by Dale Dixon that he was coerced into false testimony. However, that declaration was contradicted by Mr. Dixon's testimony at the habeas evidentiary hearing. There, Mr. Dixon stated that he had signed the declaration without reading it. He then reaffirmed the testimony he had given at trial. Subsequently, the state district court found the following:

1. Defendant failed to prove that Dale Dixon was coerced into testifying falsely at trial;
2. Defendant failed to prove any change in Dale Dixon's testimony between the trial and the habeas hearing.

RA (Doc. 11-4), Ex. VV at 59. Absent clear and convincing evidence to the contrary, this Court must presume the correctness of the state court's factual findings. Perry has not identified anything in the record to indicate that the state court's factual findings were an unreasonable determination of the facts considering the evidence presented in the state court proceedings.

### 7. Fundamental Error Claim (Ground 13)

In Ground Thirteen, Perry argues that his fundamental rights have been violated. He does not state the basis for this claim but includes the following quote from a New Mexico case: "There exists in every court, however, an inherent power to see that a man's fundamental rights are protected in every case." *State v. Garcia*, 143 P. 1012, 1014 (NM 1914). In *Garcia*, the New Mexico court was called upon to determine if substantial evidence supported the verdict. It found

that when the weight of the evidence failed to support the verdict "but shows conclusively that the defendant did not commit the crime charged," that the court on its "own motion, will take notice of the fact, and reverse the judgment." *Id. (Syllabus by the Court).* Reference to this case and the initial quote first appears in Perry's First Amended State Petition as part of an argument that he was factually innocence of the criminal charges. See RA (Doc. 11-3), Ex. OO at 9, 98. Perry appears to be making the same assertion here.

In its Evidentiary Order, the state district court found that "[t]here was substantial and compelling evidence supporting the verdict of the jury." RA (Doc. 11-4), Ex. VV at 58. It also found that Perry's testimony "at the habeas hearing, that he had consensual sex with the victim was not credible." *Id* at 59. It is incumbent on Perry to rebut the state district court findings with clear and convincing evidence. He has not rebutted it with any evidence. The Court will deny this claim.

### 8.  Denial of First State Habeas Petition (Ground Fourteen)

Finally, Perry argues that when the state district court denied his First State Habeas Petition on the ground that it had no jurisdiction and the New Mexico Supreme Court denied his subsequent writ of certiorari, his constitutional due process rights were violated. However, this claim has been mooted by subsequent proceedings. In its Order following the evidentiary hearing on Perry's Second State Habeas Petition, the state district court noted that its Evidentiary Order encompassed his First State Habeas Petition, his Second State Habeas Petition and his Amended State Habeas Petition. Perry cannot assert a denial of due process based on the state district court's refusal to consider a petition that it later considered.

Perry has not presented this Court with any evidence that under 28 U.S.C. § 2254 his state conviction was contrary to or involved an unreasonable application of federal law or that his conviction was founded on an unreasonable factual determination.

IT IS THEREFORE ORDERED THAT the PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY is DISMISSED with prejudice. A Final Judgment will be entered.

_____
SENIOR UNITED STATES DISTRICT JUDGE